IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

|  |  |
|---|---|
| CAMERON D. WILLIAMS,<br><br>               Petitioner,<br><br>    vs.<br><br>WARDEN DAVID BOBBY,<br><br>               Respondent. | Case No. 5:22-cv-01726-PAG<br><br>**DISTRICT JUDGE**<br>Patricia A. Gaughan<br><br>**MAGISTRATE JUDGE**<br>James E. Grimes Jr.<br><br>**REPORT AND RECOMMENDATION** |

Cameron D. Williams filed a petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Williams is currently in custody at Grafton Correctional Institution serving a sentence of life imprisonment, with possibility of parole after 30 years, imposed by the Summit County Court of Common Pleas in *State v. Williams*, Case No. CR 07-08-2540. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Williams's petition.

### Summary of underlying facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell*, 525 F.3d 466, 474 (6th

Cir. 2008). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id.*

The Ohio Court of Appeals for the Ninth Appellate District summarized the facts underlying Williams's conviction as follows:

> {¶ 2} On August 7, 2007, Williams was indicted on one count of aggravated murder in violation of R.C. 2903.01(A), a special felony, along with three distinct capital offense specifications and one firearm specification; one count of aggravated murder in violation of R.C. 2903.01(B), a special felony, along with three distinct capital offense specifications and one firearm specification; one count of aggravated murder in violation of R.C. 2903.01(D), a special felony, along with three distinct capital offense specifications and one firearm specification; one count of kidnapping in violation of R.C. 2905.01(A)(1)/(A)(2)/(A)(3)/(A)(4), a felony of the first degree, along with a firearm specification; one count of kidnapping in violation of R.C. 2905.01(B)(1)/(B)(2), a felony of the first degree, along with a firearm specification; one count of aggravated burglary in violation of R.C. 2911.11(A)(1)/(A)(2), a felony of the first degree, along with a firearm specification; one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree, along with a firearm specification; one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, along with a firearm specification; one count of violating a protection order in violation of R.C. 2919.27, a felony of the third degree, along with a firearm specification; one count of intimidation of a crime victim or witness in violation of R.C. 2921.04(B), a felony of the third degree, along with a firearm specification; one count of escape in violation of R.C. 2921.34(A)(1), a felony of the third degree; one count of having weapons while under disability in violation of R.C. 2923.13(A)(1)/ (A)(2)/(A)(3)/(A)(4), a felony of the third degree; one count of carrying concealed weapons in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; one count of menacing by stalking in violation of R.C. 2903.211(A), a felony of the fourth degree, along with a firearm specification; and one count of domestic

violence in violation of R.C. 2919.25(C), a misdemeanor of the first degree.

{¶ 3} Williams was arraigned on August 10, 2007. The magistrate issued an order from the arraignment on August 15, 2007, journalizing Williams' plea of not guilty to the charges in the indictment, modifying bond, and ordering that "Attorney Jon Sinn and Attorney John Alexander be permitted to withdraw as counsel, and Attorney Kerry O'Brien has been appointed as first chair counsel and Attorney John Greven has been appointed as second chair counsel for the Defendant in this case[.]" Williams did not move to set aside the magistrate's order. Also on August 15, 2007, Williams executed a time waiver. Attorneys O'Brien and Greven signed the certification on the time waiver, certifying that they had explained to Williams his right to have his case tried within 270/90 days after arrest and that Williams voluntarily agreed to waive time. On August 16, 2007, a copy of an "Appointment of Trial Counsel in a Capital Case" form was filed. The form states, in part:

> "This form is used pursuant to Rule 20 of the Rules of Superintendence for the Courts of Ohio to report the appointment of trial counsel where the defendant is indigent, counsel is not privately retained by or for the defendant, and the death penalty can be or has been imposed upon the defendant."

The form indicated that Attorneys O'Brien and Greven were appointed on August 3, 2007. Both attorneys executed the attorney certification part of the form, accepting appointment, affirming their current certification under Sup.R. 20 to accept such appointments, and certifying that the appointment would not create an excessive workload which would interfere with the rendering of quality representation in accordance with constitutional and professional standards. The record does not include any earlier "Appointment of Trial Counsel in a Capital Case" form appointing any other attorneys to represent Williams.

{¶ 4} On August 23, 2007, Williams filed an index of twenty-eight motions he filed the same day. Included was

3

a "motion for all motions to be heard on the record." The trial court held a hearing on all pending motions on September 13, 2007, and issued a journal entry on September 14, 2007, either ruling on or taking under advisement all motions. The trial court expressly granted the motion for all motions to be heard on the record.

{¶ 5} On February 11, 2008, immediately prior to the commencement of trial, the State moved to dismiss certain counts and specifications and to amend the language in some specifications. The trial court granted the motion and the indictment was amended as follows. The trial court dismissed, pursuant to the State's recommendation, the first capital offense specification for each of counts one, two and three (the three aggravated murder charges); the second charge of kidnapping and its firearm specification; the charge of burglary and its firearm specification; the charge of rape and its firearm specification; the charge of menacing by stalking and its firearm specification; and the charge of domestic violence. The trial court amended, pursuant to the State's recommendations, several charges and specifications to remove reference to charges and/or specifications which had been dismissed. The trial court, pursuant to the State's recommendation, amended the first remaining count of kidnapping to reflect the language in R.C. 2905.01(A)(2) only. The trial court, pursuant to the State's recommendation, further amended the charge of having weapons while under disability to delete the language "dangerous ordnance" and "and/or is drug dependent, in danger of drug dependence, or a chronic alcoholic." The indictment was renumbered accordingly.

{¶ 6} The matter proceeded to trial. During the course of trial, Williams filed a motion requesting jury instructions on the lesser included offenses of murder and voluntary manslaughter. The trial court granted the request for a jury instruction on the lesser included offense of murder in relation to the first charge of aggravated murder, denied it as to the other 2 charges of aggravated murder, and denied in toto the request for an instruction on the lesser included offense of voluntary manslaughter. At the conclusion of trial, the jury found Williams guilty of the following: the lesser included offense of murder in count one; two counts of aggravated murder, plus 2 capital offense specifications

4

and a firearm specification for each count; kidnapping, plus the firearm specification; aggravated burglary, plus the firearm specification; violating a protection order while committing a felony, plus the firearm specification; intimidation of a crime victim while using force or unlawful threat of harm, plus the firearm specification; escape while under detention for a felony of the third, fourth or fifth degree; having weapons while under disability; and carrying a concealed weapon.

{¶ 7} The matter proceeded to the mitigation phase. The jury found in regard to both counts of aggravated murder that the aggravating circumstances did not outweigh the mitigating factors presented in the case by proof beyond a reasonable doubt. The jury found that "the sentence of life imprisonment without parole eligibility for thirty full years should be imposed[.]"

{¶ 8} At sentencing, the trial court sentenced Williams to a mandatory three-year prison term on each of the six firearm specifications, then merged three specifications into the remaining three for a total of nine years. The trial court sentenced Williams to a mandatory term of life in prison with parole eligibility after 15 years on the murder count, to a mandatory term of life in prison with parole eligibility after 30 years on both aggravated murder counts, then merged the murder count and one aggravated murder count into the remaining aggravated murder count for a total of life in prison with parole eligibility after 30 years. The trial court sentenced Williams to ten years in prison for both the kidnapping and aggravated burglary counts, to five years for both the escape and having weapons while under disability counts, and ordered that those sentences would be served consecutively to each other for a total of 30 years. The trial court sentenced Williams to 5 years in prison for violation of a protection order, to 5 years for intimidation of a crime victim and to 18 months for carrying concealed weapons, and ordered that those sentences be served concurrently with the sentences imposed, respectively, for aggravated burglary, kidnapping and having weapons while under disability. In sum, the trial court sentenced Williams to life with parole eligibility after 69 years.

…

{¶ 16} Tamara Hughes testified that, since her divorce from Williams in July 2005, she had on-again, off-again relationships with both Williams and Polk. Williams' statement to police after his arrest was admitted into evidence. In that statement, Williams admitted that he knew of Hughes' on-going sexual relationship with Polk. Williams asserted that he and Polk had made verbal threats to one another over the phone for 2 years, while Hughes maintained a relationship with both men. Hughes testified, and Williams asserted in his police interview, that Williams was familiar with the car that Polk drove.

{¶ 17} Hughes testified that she had plans to return from her job in Chicago to her Akron Metropolitan Housing Authority ("AMHA") subsidized housing in Barberton on Friday, July 27, 2007. She testified that she had only given Williams her daughter's cell phone number as a means of contacting her. She testified that she had plans to spend the weekend with Polk, and that Williams was not expecting to "hook up" with her that night.

{¶ 18} Williams explained to the police the events of the morning of Saturday, July 28, 2007 as follows. He had obtained a gun about 3 days earlier for the purpose of robbing people to obtain "weed" and crack (cocaine). On Saturday morning, while "high" from "smokin' weed," he went to Hughes' apartment to talk. He recognized Polk's car in front of Hughes' apartment. The video surveillance tape of the housing complex shows Williams going to Hughes' front door, leaving and going to the side of the apartment and then around to the back of the apartment. Williams admitted, and the surveillance video confirms, that he broke into Hughes' apartment by tearing a screen and entering through the kitchen window. Williams told the police that he knew Polk was in the apartment and he went upstairs, "praying" that Polk was not in bed with Hughes.

{¶ 19} Williams asserted that he entered the apartment to confront both Hughes and Polk, and that he was willing to go with any "flow" that happened. He admitted during his interview that he entered Hughes' bedroom and was mad when he saw Polk in "his" bed with Hughes. Williams

6

stated that he leaned over the bed, put the gun to Polk's head and pulled the trigger. He stated that the gun "clicked" without firing, so he pulled the slide back on the gun to chamber a round and fired 3–4 more times. Williams stated that Hughes and Polk had awakened after the gun misfired, that he pushed Hughes out of the way, and that he kept firing as Polk rose from the bed and started to approach. Williams told the police that he "snapped" when he saw Polk's car and "passed out" and "lost it" upon seeing Polk in bed. Williams told the police that, after shooting Polk, he forced Hughes to get dressed and leave with him. The surveillance video shows that 84 seconds elapsed from the time Williams entered Hughes' apartment through the kitchen window until he and Hughes exited the apartment together through the front door.

{¶ 20} Hughes testified that she awakened on the morning of July 28, 2007, to find Williams leaning over her bed. She testified that she jumped up, grabbed Williams' arm, and saw his gun. Hughes testified that she tried to calm Williams, but he responded, "No, bitch, I told you." She testified that Williams began firing the gun and that she saw Polk on the floor. Hughes testified that Williams told her:

> "Come on, bitch, get your shit. You gonna get me out of here. You ain't gonna let them catch me. Get your shit on. Let's go, or I'm gonna take your life too. Now, look at that N* * * * *. He dead. Dead. Now what?"

Hughes testified that, after Williams took her from the apartment, she speculated that Polk might still be alive. She testified that Williams told her, "I want that N* * * * * dead." She testified that Williams made her drive the two of them away, cautioning her to obey all traffic laws so as not to call attention to them. Hughes testified that Williams threatened that he would "blow your head off" if the police approached their vehicle.

*State v. Williams*, 2009-Ohio-3162, 2009 WL 1856743 (Ohio Ct. App. 2009).

## Procedural Background[1]

*Trial Court Proceedings*

In July 2007, a Summit County Grand Jury indicted Williams on three counts of aggravated murder with death and firearms specifications, two counts of kidnapping with a firearm specifications, one count of aggravated burglary with a firearm specification, one count of rape with a firearm specification, one count of violating a protection order with a firearm specification, one count of intimidation of a crime victim or witness with a firearm specification, one count of escape, one count of having weapons while under disability, one count of carrying concealed weapons, one count of menacing by stalking with a firearm specification, and one count of domestic violence. Doc. 12-1 at 19. Williams entered a plea of not guilty on all counts.[2] Doc. 12-1 at 30.

Following a jury trial, Williams was found guilty of: the lesser included offense of murder in count one; two counts of aggravated murder, plus two capital offense specifications and a firearm specification for each count; kidnapping, plus a firearm

---

[1]   Although the majority of Williams's various state court proceedings are generally described in this section, the Court notes as an initial matter that the trial court's 2008 and 2009 judgments and sentencing entries are not the operative judgment entries for federal habeas purposes. Instead, as the Sixth Circuit Court of Appeals determined in August 2022, the trial court's April 24, 2014 *nunc pro tunc* entry was a new judgment which served as the operative judgment entry for purposes of determining the timeliness of Williams's present federal habeas petition. *See* Doc. 12-1 at 1780.

[2]   Prior to trial Williams filed a motion *in limine*, Doc. 12-1 at 32, and a motion to suppress, *id.* at 37, which were subsequently denied, *id.* at 49, 50. Also prior to trial, Williams's indictment was amended. *Id.* at 55.

specification; aggravated burglary, plus a firearm specification; violating a protection order, plus a firearm specification; intimidation of a crime victim or witness, plus a firearm specification; escape; having weapons while under disability; and carrying a concealed weapon. Doc. 12-1 at 57–59. In March 2008, the trial court sentenced Williams to a term of life imprisonment, with eligibility for parole after 69 years. *Id.* at 62–65.

*Direct Appeal*

In April 2008, Williams, represented by new counsel, filed a timely appeal to Ohio's Ninth District Court of Appeals. *Id.* at 66. In June 2009, the court of appeals affirmed in part and reversed in part, the judgment of the trial court. *Id.* at 206. In August 2009, Williams, pro se, filed a timely notice of appeal and memorandum in support of jurisdiction with the Supreme Court of Ohio. *Id.* at 230, 233. In November 2009, the Ohio Supreme Court denied leave to appeal and dismissed Williams's appeal. *Id.* at 271.

*Post-Conviction Motions*

From August 2008 through May 2010 Williams, pro se, filed a variety of motions including: a petition to vacate or set aside judgment for conviction or sentence with the trial court, *id.* at 292; an application under Ohio Appellate Rule 26(B) to reopen his direct appeal, *id.* at 272; a contemporaneously filed motion for leave to file a motion for new trial and motion for a new trial, *id.* at 418, 422; and a motion to dismiss the aggravated burglary count from his indictment, *id.* at 438. None of the motions were granted.

*First Federal Habeas Petition*

In September 2010, Williams, pro se, filed his first petition for writ of habeas corpus in federal court. *Id.* at 491. Williams asserted the following grounds for relief:

> **GROUND ONE:** The trial court abused its discretion in refusing to allow the jury to consider the charge of Voluntary Manslaughter. This is a violation of Cameron's Fourteenth Amendment rights. The crime of Voluntary Manslaughter is stated as follows; Knowingly cause another death while under the influence of sudden passion or in a sudden fit of rage brought on by serious provocation occasioned by the victim reasonable sufficient to incite the offender to use deadly force.

> **GROUND TWO:** Appellate counsel was ineffective for failing to raise the issue that the Trial Court abused it's discretion in refusing to allow the jury to consider the charge of Murder, regarding counts (2) and (3) of the Indictment. This is a violation of Cameron's Fourteenth Amendment rights. The crime of Murder is stated as follows; No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.

> **GROUND THREE:** The Court committed reversible error when it failed to preserve for the record the reason Defendant's initial trial counsel was removed from the case. This is a violation of Cameron's due process and Fourteenth Amendment rights.

> **GROUND FOUR:** Appellate counsel was ineffective for failing to raise the issue that trial counsel failed to object to the incompleteness of the record, the removal of Cameron's initial trial counsel during the arraignments. Appellate counsel failed to indicate record would include statement of the evidence App. R. 9(c), App. R. 9(d), failed to raise issue that trial counsel did not attempt to create an adequate record, failed to raise the material prejudice resulting from the removal of Cameron's initial counsel. Appellate counsel failed to raise the issue that trial counsel did not object to the jury instructions or verdict forms. This is a violation of Cameron's Fourteenth Amendment rights.

**GROUND FIVE:** Appellate counsel was ineffective for failing to raise the issue that trial counsel did not object to admission of false evidence. This is a violation of Cameron's Fourteenth Amendment rights.

**GROUND SIX:** Appellate counsel was ineffective for failing to raise the issue that Cameron's trial counsel failed to object nor inquire the fact that Ms. Hughes was released unharmed which is a violation of Cameron's due process and Fourteenth Amendment rights.

Doc. 12-1 at 496–503. This Court dismissed Williams's petition in March 2012 when this Court accepted the magistrate judge's report and recommendation based on lack of merit and procedural default. *Id.* at 538, 562. In February 2013, the Sixth Circuit denied Williams's application for a certificate of appealability. *Id.* at 574.

*Motions for Resentencing and Related Proceedings*

While Williams's first federal habeas petition was pending, he continued to file various state court motions. As is relevant to his present habeas petition, in April 2013, Williams, pro se, filed a motion to correct an illegal sentence, arguing that his sentence to post-release control was not properly imposed. *Id.* at 821. In May 2013, the trial court granted his motion to correct an illegal sentence only as to the imposition of post-release control. *Id.* at 830.

Relevant to Williams's habeas petition, on September 10, 2013, the trial court held a hearing "to correct notification to the Defendant of his post-release control requirements," which resulted in an entry on September 30, 2013, that corrected Williams's post-release control requirements under Ohio Revised Code Section 2929.191. *Id.* at 928–29. On October 9, 2013, Williams, pro se, filed a timely notice of

appeal. *Id*. at 933. On April 16, 2014 the court of appeals overruled all assignments of error but remanded the matter to the trial court to correct its September 30, 2013 entry to reflect that it was a *nunc pro tunc* entry. Doc. 12-1 at 1061. On April 24, 2014, the trial court issued a *nunc pro tunc* entry following the court of appeals' remand. *Id*. at 1168. In May 2014, Williams filed a notice of appeal with the Ohio Supreme Court. *Id*. at 1071. On September 3, 2014, the state supreme court declined to accept jurisdiction. *Id*. at 1099.

On March 9, 2020, Williams filed a delayed application under Ohio App. R. 26(A) for reconsideration of the court of appeals April 16, 2014 ruling. *Id*. at 1100. On November 3, 2021, the court of appeals issued an entry denying Williams's delayed application for reconsideration for failure to show extraordinary circumstances to excuse his failure to file his application for reconsideration within 10 days after the clerk mailed the judgment to the parties. Doc. 12-1 at 1126–1127; *see* Ohio App. R. (26)(A)(1)(a). The court of appeals noted that Williams's delayed application was filed, not just outside of the statutory 10-day period to file for reconsideration, but also six years after the court's April 16, 2014 decision that Williams challenged and four years after *In re Stansell*, 828 F.3d 412 (6th Cir. 2016), which Williams alleged was the circumstance that justified delayed reconsideration. Doc. 12-1 at 1127. The court of appeals, thus, denied his delayed application for reconsideration as untimely. *Id*. Williams did not appeal.

*Additional Post-Conviction Motions*[3]

In January 2014, Williams, pro se, filed a motion to proceed to judgment, Doc. 12-1 at 1142, which the trial court denied in February 2014, for lack of jurisdiction, *id.* at 1154. Williams did not appeal.

In April 2014, Williams, pro se, filed a motion to correct his sentences. *Id.* at 1156. In June 2014, the trial court denied Williams's motion based on Ohio's res judicata doctrine. *Id.* at 1174, 1177. Williams, pro se, field a notice of appeal with the court of appeals in August 2014. *Id.* at 1180. In June 2015, the court of appeals affirmed the trial court and overruled Williams's assignments of error. *Id.* at 1245. In July 2015, Williams, pro se, filed in the court of appeals both an application for reconsideration and motion to certify a conflict. *Id.* at 1252, 1259. On the same day in August 2015, the court of appeals denied Williams's application for reconsideration and granted his motion to certify a conflict. *Id.* at 1273, 1275. In September 2015, Williams filed a notice of appeal with the Supreme Court of Ohio asserting one error, which the state supreme court declined to accept over. Doc. 12-1 at 1277, 1301. Also in September 2015, Williams filed a notice of certified conflict, on which the Supreme Court of Ohio ordered briefing. *Id.* at 1302, 1323. In November 2016, the Supreme Court of Ohio issued a judgment entry and opinion which modified the court of appeals' judgment that vacated Williams's sentences imposed for murder in count one

---

[3]     This section summarizes the majority of Williams's state court filings around and following the trial court's April 24, 2014 *nunc pro tunc* judgment entry because that is the operative judgment for purposes of Williams's instant federal habeas petition.

and aggravated murder in count two. *Id.* at 1432, 1433. The court held that Williams's remaining convictions and sentences were not affected by its ruling. *Id.* at 1432.

In August 2015, Williams filed a motion to correct a clerical mistake and a motion to correct illegal sentences. *Id.* at 1470, 1478. In September 2015, the trial court denied Williams's motion, finding that his motions were untimely and barred by Ohio's res judicata doctrine. *Id.* at 1490. In July 2016, on appeal, the court of appeals overruled Williams's assignments of error and affirmed the trial court's judgment. *Id.* at 1538. In January 2017, the state supreme court declined to accept jurisdiction over Williams's appeal. *Id.* at 1579.

In August 2016, Williams, pro se filed a motion to correct illegal sentence. *Id.* at 1587. In September 2016, the trial court denied Williams's motion based on lack of jurisdiction. *Id.* at 1619. Williams did not appeal.

In December 2016, Williams, pro se, filed a motion for final appealable order. *Id.* at 1621. In February 2017, the trial court denied this motion. *Id.* at 1645. In February 2017, Williams, pro se, filed a notice of appeal, *id.* at 1647, which the court of appeals dismissed for lack of jurisdiction, *id.* at 1649. In March 2017, Williams, pro se, filed a motion to certify a conflict, *id.* at 1650, which the court of appeals denied, *id.* at 1655. Williams did not appeal.

In January 2017, Williams, pro se, filed a motion for leave to file a motion for new trial and a motion for a new trial. Doc. 12-1 at 1657, 1660. In February 2017, the trial court denied his motion for leave to file a motion for new trial. *Id.* at 1668. In March 2017, Williams, pro se, filed a notice of appeal and motion for leave to file a

14

delayed appeal. *Id.* at 1672, 1673. The court of appeals granted Williams's motion for leave to file a delayed appeal. *Id.* at 1685. Williams filed a brief asserting two assignments of error. *Id.* at 1686. In November 2017, the court of appeals overruled both assignments of error and affirmed the trial court's denial. *Id.* at 1724. Williams did not appeal.

In June 2018 Williams, pro se, filed a motion for revised journal entry. *Id.* at 1732. In July 2018, the trial court denied Williams's motion for lack of jurisdiction and based on Ohio's res judicata doctrine. *Id.* at 1743. Williams did not appeal.

In September 2018, Williams, pro se, filed a motion to correct illegal sentence. *Id.* at 1746. In November 2018, the trial court denied Williams's motion as untimely and barred by Ohio's res judicata doctrine. *Id.* at 1757. Williams did not appeal.

In April 2019, Williams, pro se, filed another motion to correct illegal sentence. *Id.* at 1759. In July 2019, the trial court denied his motion as untimely and barred by Ohio's doctrine of res judicata. *Id.* at 1777. Williams did not appeal.

*Request to File Second or Successive Petitions*

In March 2022, Williams, pro se filled a motion for authorization to file a second or successive federal petition for writ of habeas corpus. Doc. 12-1 at 1780. The United States Court of Appeals for the Sixth Circuit denied Williams's motion as unnecessary and found that the state trial court's September 13, 2013 and April 24, 2014 entries amounted to additional terms of post-release control. *Id.* at 1782–83. The Sixth Circuit concluded that because the trial court's *nunc pro tunc order*, of April

15

24, 2014, was a new judgment, Williams's petition would not be successive. *Id*. at 1783.

*Current Federal Habeas Petition*

On September 22, 2022, Williams filed this federal habeas petition. In his petition, Williams raised the following grounds for relief:

> GROUND ONE: The trial court's entry dated September 30, 2013, does not comply with Crim. R. 32(C) because it fails to reflect the verdict, convictions or sentences.

> GROUND TWO: The trial court abused it discretion when it failed to inform defendant of the jury verdicts before imposing sentences.

> GROUND THREE: The trial court abused it's discretion when it failed to inform defendant of notification of right to appeal and denied defendant appointment of appellate counsel.

> GROUND FOUR: The trial court abused it's discretion by failing to sentence defendant pursuant to: State v. Johnson which constitutes "plain error."

> GROUND FIVE: The trial court committed "plain error" when it failed to instruct the jury on second-degree kidnapping.

> GROUND SIX: The prosecutor committed misconduct by withholding exculpatory evidence & not correcting perjured testimony.

> GROUND SEVEN: The trial court abused it's discretion by denying defendant's Petition to Vacate or Set Aside Judgment of Conviction or Sentence.

> GROUND EIGHT: Trial & appellate counsel were ineffective for failing to address errors five, six, & seven.

16

> GROUND NINE: The Ohio Supreme Court erred by vacating Count One Murder & Count Two Agg. Murder without remanding back to the trial court for a resentencing hearing.

Doc. 1, at 8–19.

The Warden filed a return of writ, Doc. 12, and Williams filed a traverse, Doc. 15. Several months later, and without leave of court, Williams filed a document entitled "Amendment to Traverse." Doc. 19. Because this document is not recognized under the federal habeas rules, the Court's scheduling order, and was filed without leave of court, the Court does not consider it in this report and recommendation.[4]

## Law and Analysis

### *William's Petition is Time-Barred*

In his return, the Warden argues that, among other reasons,[5] Williams's petition should be dismissed because it is untimely. Doc. 12 at 30. The Court agrees that Williams's petition is untimely and therefore recommends that it be dismissed on that ground. It bears mentioning at the outset that at no point does Williams respond to the Warden's statute of limitations argument or argue that he is entitled

---

[4]     Even if the Court considered Williams's "Amendment of Traverse," it does not offer any compelling or sufficiently developed argument that would overcome the fact that his petition was filed four years after the expiration of the applicable statute of limitations.

[5]     The Warden also argues that all of Williams's grounds are either not cognizable, procedurally defaulted, or both. The Court does not address these arguments because Williams's habeas petition is untimely.

to tolling of the statute of limitations.[6] So he is not off to a good start, having forfeited any argument that certain filings did or did not toll his limitations period. *See Buetenmiller v. Macomb Cty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (citing *McPherson*, 125 F.3d at 995).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the 1996 Act"), Pub. L. No. 104–132, 110 Stat. 1214, provides a one-year limitations period in a habeas action brought by a person in custody from a state court judgment. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of—

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[6]     Williams does argue throughout his petition that "In re Stansell was not yet decided" and that some claims were not fully developed during the one-year limitations period. *See* Doc. 1 at 10, 22. These arguments are not sufficiently developed and are thus forfeited. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (citation omitted). Additionally, *In re Stansell* was decided in 2016 which, though outside of the timeline for direct appeal, was during the tolling period that extended until April 21, 2017.

28 U.S.C. § 2244(d)(1).

At issue in this matter are the statute of limitations periods described in subparagraphs (A) and (B).

Under subparagraph (A), a judgment becomes final at the "conclusion of direct review or [on] the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Certain events during the state court proceedings may operate to establish a new limitations period, such as a change in sentencing. If a trial court's *nunc pro tunc* entry changes the petitioner's sentence to the petitioner's detriment, the *nunc pro tunc* entry will re-start the limitations period. *Crangle v. Kelly*, 838 F.3d 673, 678–79 (6th Cir. 2016). But a "nunc pro tunc order [which] merely correct[s] a record to accurately reflect the court's actions, … would not be a new sentence that resets the statute of limitations under § 2244(d)(1)(A)." *Id.* at 680.

Various state court proceedings may prolong the amount of time before a statute of limitations accrues or toll the limitations period once it starts. "The distinction between direct and collateral review is significant in the application of the AEDPA time limit. Direct review delays the start of the statute of limitations. Collateral review merely tolls its running." *Lambert v. Warden, Ross Corr.*, 81 F. App'x 1, 3 (6th Cir. 2003); *see Lopez v. Wilson*, 426 F.3d 339, 346 (6th Cir. 2005). The pendency of a "properly filed" application may toll the one-year statute of limitation before it began to run. *See* 28 U.S.C. § 2244(d)(2); *Bronaugh v. Ohio*, 235 F.3d 280,

282–83 (6th Cir. 2000).[7] A state post-conviction filing that is denied as untimely by the state court is not considered "properly filed" for purposes of tolling the federal habeas statute of limitations. *See Pace v. DeGuglielmo*, 544 U.S. 408, 410 (2005). And, though a properly filed post-conviction filing can toll a limitations period, a post-conviction filing that is filed after the limitations period has passed will not revive a period that has expired. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). There is no tolling under 28 U.S.C. §2244(d)(2) for the ninety-day period to apply for writ of certiorari to the Supreme Court following the state's denial of post-conviction or other collateral relief. *Lawrence v. Florida*, 549 U.S. 327, 331 (2007).

Here, the trial court's April 24, 2014 *nunc pro tunc* entry made changes to the conditions of Williams's post-sentence release. *See* Doc. 12-1 at 1168. The trial court's *nunc pro tunc* entry was therefore a new judgment and reset the limitations period for Williams such that it would expire one year after the time to file a direct appeal of that judgement expired. *See* 28 U.S.C. § 2244(d)(1)(A); *Crangle*, 838 F.3d at 680; *see also* Doc. 12-1 at 1780–1783. On October 9, 2013, Williams appealed the trial court's September 30, 2013 ruling. On May 30, 2014, Williams appealed the court of

---

[7]    Section 2244(d)(2) provides that:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

appeals April 16, 2014 order[8] to the state supreme court. Doc. 12-1 at 1071. On September 3, 2014, the state supreme court declined to accept Williams's appeal on the issue. *Id.* at 1099.

The direct review process, described above, exhausted Williams's direct state review process, but he could have filed a petition for writ of certiorari to the United States Supreme Court within 90-days of the state supreme court's judgment. *See* S. Ct. Rule 13. Williams's new judgment, thus, became final on December 2, 2014—90 days from the state supreme court's September 3, 2014 order declining to accept jurisdiction on direct appeal. *See Jimenez v. Quarterman*, 555 U.S. 113, 119–120 (2009) (explaining that until the time permitted for state direct appeal and, if state direct appeal is exhausted, appeal to the United States Supreme Court has passed "the process of direct review has not come to an end and a presumption of finality and legality cannot yet have attached to the conviction and sentence") (quotations omitted, citing *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)). Absent any tolling events, Williams then had until December 3, 2015 to file a federal habeas petition.

The Warden argues that Williams filed motions that operated to toll the statute of limitations until April 21, 2017, when a pending motion partially involving his September 10, 2013 resentencing hearing was resolved by the court of appeals. *See* Doc. 12 at 32, citing Doc. 12-1 at 1655. The Warden does not cite specifically what other motions may have served to toll the statute of limitations. And Williams does

---

[8]     This order included the remand order directing the trial court to correct its September 30, 2013 entry, which resulted in the April 24, 2014 entry.

not make any discernable tolling argument. On review of the state court record, the Court has identified the following motions that tolled the limitations period of time calculated by the Warden:

- an April 2014 motion to correct sentences, Doc. 12-1 at 1156, which was resolved after appeal to the state supreme court in November 2016, *id.* at 1432;

- an August 2016 motion to correct illegal sentences, *id.* at 1587, which was denied in September 2016 for lack of jurisdiction based on the pending appeal of Williams's April 2014 motion, *id.* at 1619; and,

- a December 2016 motion for final appealable order arising out of the September 10, 2013 sentencing hearing, *id.* at 1621, which the court of appeals denied in March 2017, *id.* at 1649, and refused to certify a conflict regarding on April 21, 2017, *id.* at 1656.

It appears that based on these motions, which were first filed during the original limitations period, the Warden takes the position that the statute of limitations was tolled until April 21, 2017. Doc. 12. At 32. These motions were properly filed, such that they could toll the statute of limitations period. *See Wall v. Kholi*, 562 U.S. 545, 550–51 (2011) ("a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" can toll the limitation period) (quoting 28 U.S.C. § 2244(d)(2)). Williams has not discussed this tolling, but it only serves to extend his period for filing a federal habeas petition. The Court thus finds that the statute of limitations was tolled until April 21, 2017. Williams then had one year, i.e., until April 21, 2018, to file his federal habeas petition. He did not do so.

22

The remainder of Williams's court filings did not operate to toll the limitations period because they were either not "properly filed" or they were filed after the expiration of the limitations period. Specifically, in January 2017 Williams filed both a motion for leave to file a motion for a new trial, Doc. 12-1 at 1657, and a motion for new trial, *id.* at 1660, on the same day. In November 2017, the court of appeals affirmed the denial of these motions on the ground that they were untimely. *See id.* at 1724. Williams also filed motions to correct his sentence and applications for delayed reconsideration between 2018 and 2020, *id.* at 1126, 1586, 1757, 1777. Each of these motions were denied on the ground that they were untimely. They were thus not properly filed. *See Pace*, 544 U.S. at 418 (holding that untimely postconviction petitions are not "properly filed" and thus did not toll the statute of limitations); *see also Anderson v. Warden*, 2010 WL 1387504, at *6 (N.D. Ohio Mar. 9, 2010) (holding that the delayed appeal in of a post-appellate motion for new trial is part of the state's collateral review process) (citing *Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. 2009) and *Johnson v. United States*, 246 F.3d 655, 658 (6th Cir. 2010)). Because they were not properly filed, they have no tolling effect.[9] *Id.*

Additionally, in March 2020, six years after the state supreme court declined to accept Williams's direct appeal, Williams filed under Ohio Appellate Rule 26(A) a delayed application for reconsideration of the *nunc pro tunc* judgment. Doc. 12-1 at

---

[9]    Even if Williams's motions for a new trial filed years late could be considered as part of the direct review process, the result would not change because the court the court of appeals affirmed the denial of these motions in November 2017, years before Williams filed his habeas petition.

1100. This application was filed years after the limitations period passed, and was denied as untimely by the court of appeals. *Id.* at 1126. Because it was denied as untimely, this motion was not properly filed and cannot operate to toll the limitations period. *See Pace*, 544 U.S. at 413 (explaining that "a [post-conviction] petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception.").

Williams does not develop any clear argument as to which limitations period should be considered. But he cites 28 U.S.C. §2244(d)(1)(B) in his Traverse. *See* Doc. 15 at 1. Assuming he has not forfeited this argument, *see Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005), the Court construes this citation as an argument that subparagraph (B) applies, *see Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985) (explaining that pro se habeas petitioners are entitled to have their filings liberally construed).

Recall that Section 2244(d)(1)(B) applies from "the date on which [an] impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Federal courts that have applied the limitations period prescribed under Section 2244(d)(1)(B) have required not just that the impediment be described, but that the petitioner also show a connection between the impediment and some actual harm amounting to the violation of a Constitutional right or other federal law. *See Holland v. Florida*, 560 U.S. 631, 665 (2010) ("Section

2244(d)(1)(B) expressly allows tolling for state-created impediments that prevent a prisoner from filing his application, but only if the impediment violates the Constitution or federal law.") (J. Scalia dissenting); *see also Winkfield v. Bagley*, 66 Fed. Appx. 578, 582 (6th Cir. 2003) (holding that 28 U.S.C. § 2244(d)(1)(B) did not render a habeas petition timely because petitioner failed to show any "causal relationship" or "connection" between the state action and the petitioner's ability to file a federal habeas petition); *United States ex rel. Mueller v. Lemke*, 20 F. Supp. 3d 659, 665–66 (N.D. Ill. 2014) (finding that Section 2244(d)(1)(B) inapplicable because the petitioner failed to provide any evidence that the Constitution or other federal law was violated or sufficiently demonstrate a state-created impediment) (citing *Holland*, 560 U.S. at 665).

Beyond stating that there was an "erroneous decision in C.A. No. 27101 [that] created an impediment to filing[,]" Williams neither specifies what the "impediment to filing" was nor does he describe when it was removed or how it prevented him from filing. Doc. 15 at 1–2. Williams also does not describe how the unspecified impediment resulted in actual harm, in violation of the Constitution or federal law. The Court has not discerned any state action that served as an impediment to Williams's ability to timely file his federal habeas petition.[10] Williams's failure to develop any legal or

---

[10]    Williams's petition, Doc. 1, repeatedly cites *In re Stansell*, 828 F.3d 412 (6th Cir. 2016). Williams does not develop any argument as to why this decision should operate to toll his statute of limitations. Any argument that *Stansell* could support tolling Williams's limitations period is thus forfeited. Additionally, Williams previously argued in support of his 2020 delayed application for reconsideration that *Stansell* supported delayed reconsideration. Doc. 12-1 at 1100–1103. The court of appeals rejected this argument and further found that it was not timely presented,

factual support for an argument that subparagraph (B) applies, and the Court's own evaluation of the record, leads the Court to find that the Section 2244(d)(1)(B) limitations period does not apply. Instead, the Court agrees with the Warden that the Section 2244(d)(1)(A) limitations period applies. *See* Doc. 12 at 32.

The federal habeas petition at issue here was not filed until September 2022. *See* Doc. 1. This was well outside of the applicable statute of limitations, which even after several tolling events, expired in April 2018—over four years prior to the filing of this petition. As a result, Williams's habeas petition is untimely.

**Conclusion**

Given the above, the Court should dismiss Williams's Petition as untimely.

Dated: June 12, 2024

*/s/James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).

---

as it was brought approximately six years after the judgment Williams challenged and approximately four years after *Stansell* was decided. *Id.* at 1126–1127. Williams did not appeal this decision. And neither Williams's petition nor his traverse make any argument challenging the court of appeals' decision.